UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| JACOB O'CONNOR,<br><br>Plaintiff,<br><br>v.<br><br>COLLETT'S MOUNTAIN RESORTS, INC. d/b/a FLAMING GORGE RESORT and MARETTA BAIR,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER DENYING [ECF NO. 16] DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>Case No. 2:25-cv-00487-DBB-DAO<br><br>District Judge David Barlow |

Before the court is Defendants Collett's Mountain Resorts, Inc. and Maretta Bair's (collectively, "Collett's") Motion to Dismiss First Amended Complaint,[1] Plaintiff Jacob O'Connor's response brief,[2] and Collett's reply.[3] Mr. O'Connor is a former employee of Collett's. Mr. O'Connor alleges that Collett's discriminated against him in violation of the American with Disabilities Act ("ADA"), the Fair Housing Amendments Act ("FHA"), and the Utah Fair Housing Act ("UFHA") when Collett's did not allow his service animal in employer-provided housing and subsequently terminated him. Collett's argues that Mr. O'Connor has failed to state a claim under which relief can be granted. Having reviewed the briefing and the case law, the court finds that oral argument is not necessary.[4]

---

[1] Def.'s Mot. to Dismiss First Am. Complaint ("MTD"), ECF No. 16, filed September 24, 2025.
[2] Pl.'s Memo. in Opp'n to the Def.'s Mot. to Dismiss First Am. Compl. ("Opp."), ECF No. 18, filed October 22, 2025.
[3] Def.'s Reply in Supp. of Mot. to Dismiss ("Reply"), ECF No. 19, filed November 5, 2025.
[4] *See* DUCivR 7-1(g).

1

## BACKGROUND[5]

Mr. O'Connor has type 1 diabetes.[6] To assist him with his diabetes, he owns a trained diabetic alert dog named Smokey.[7] Smokey is trained to alert Mr. O'Connor or another human when Mr. O'Connor's blood glucose levels drop or spike.[8]

In March 2024, Mr. O'Connor was hired as a front desk clerk by Collett's.[9] Mr. O'Connor told Collett's during the interview process that he had Type I diabetes.[10]

Collett's provided optional on-site employee housing.[11] Collett's offered the housing at an affordable rate and staying there significantly reduced employee's commutes to Collett's remote location.[12] Collett's deducted rent straight from the employee's paycheck.[13]

Mr. O'Connor chose to move into the employer-provided housing.[14] Based on the Housing Guidelines and Contract Mr. O'Connor signed, which had provisions for pet fees, he understood that Collett's allowed pets in employee housing.[15] He also knew that Collett's allowed guests to bring pets for an additional fee.[16]

Mr. O'Connor did not bring his service dog when he first moved in "to avoid unnecessary stress to the service animal while arranging the environment and gathering information about the

---

[5] Because the court is deciding a motion to dismiss, the following factual allegations taken from the complaint are treated as true.
[6] First Am. Compl. ("Compl.") ¶ 24.
[7] Id. ¶¶ 25–27.
[8] Id.
[9] Id. ¶ 28.
[10] Id. ¶ 30.
[11] Id. ¶ 33
[12] Id. ¶ 35.
[13] Id. ¶ 36.
[14] Id. ¶ 48.
[15] Id. ¶¶ 37–40.
[16] Id. ¶ 41.

living space, including the size of dog crate which would be able to fit into the area."[17] During the time he lived without Smokey, "Mr. O'Connor risked unnoticed nocturnal blood sugar drops."[18]

Sometime during the moving in process, Mr. O'Connor requested to move from the smallest bedroom in his assigned housing unit to the largest, so that the bedroom would have space for a mini refrigerator to hold his insulin and a kennel for his service animal.[19] Collett's management granted the request.[20]

A few days after moving in, Mr. O'Connor went to pick up Smokey and bring him to the new housing.[21] While driving back to Collett's, Mr. O'Connor called the Housing Manager to let her know that he was returning with his service dog but she did not pick up.[22] Mr. O'Connor then called the front desk manager instead.[23] The front desk manager consulted with other members of management at Collett's and then told Mr. O'Connor that pets were not allowed in employee housing.[24] Mr. O'Connor responded that his dog was not a pet, but was a service animal necessary for his diabetes.[25] The manager maintained that animals were not allowed in employee housing, mentioned that Mr. O'Connor would need paperwork showing his need for the service animal, and that his roommates in employee housing may be uncomfortable with the animal.[26]

---

[17] *Id.* ¶ 43.
[18] *Id.*
[19] *Id.* ¶¶ 44–45.
[20] *Id.* ¶ 47.
[21] *Id.* ¶ 52.
[22] *Id.* ¶ 53.
[23] *Id.* ¶ 54.
[24] *Id.* ¶¶ 55–59.
[25] *Id.* ¶ 59.
[26] *Id.* ¶ 60.

After the conversation, Mr. O'Connor asked his roommate if he would be comfortable living with a trained service animal.[27] The roommate said he was.[28] Mr. O'Connor also stopped at a local urgent care to get a doctor's note verifying his need for a diabetic alert service dog.[29]

Mr. O'Connor, concerned about the denial, then called one of Collett's owners.[30] The owner told Mr. O'Connor that the dog could stay for the night and the question would be resolved in the morning.[31]

The next day, Mr. O'Connor asked the front desk manager about whether he would be allowed to keep Smokey in the employee housing.[32] Mr. O'Connor reminded her that Smokey was a service dog necessary for his diabetes and showed her the doctor's note verifying his need for a service dog.[33] The front desk manager told him it was against the rules.[34] After Mr. O'Connor protested the denial and said he thought it was illegal, the front desk manager told him he would need to speak to Ms. Bair.[35]

Ms. Bair is an owner and the resort manager at Collett's.[36] Mr. O'Connor showed Ms. Bair the doctor's note and told her that his roommate had agreed it would be ok, but Ms. Bair told him that animals cannot be in shared employee housing.[37] Ms. Bair also told Mr. O'Connor that "[h]e should have disclosed that he had or needed a service dog when he was hired and

---

[27] *Id.* ¶ 61.
[28] *Id.* ¶ 61.
[29] *Id.* ¶ 62.
[30] *Id.* ¶ 63.
[31] *Id.* ¶ 64.
[32] *Id.* ¶ 65.
[33] *Id.* ¶¶ 65, 67.
[34] *Id.* ¶ 66.
[35] *Id.* ¶¶ 70–71.
[36] *Id.* ¶ 13.
[37] *Id.* ¶¶ 73, 75.

placed into employee housing."[38] Mr. O'Connor explained that Smokey was necessary for his diabetes and a low blood sugar event could result in coma or death.[39] But Ms. Bair responded that "[i]f it was that type of dog, then he would have had it the previous two nights."[40]

After Mr. O'Connor asked why other employees were allowed to have pets in employee housing, Ms. Bair explained that those employees had a rapport from years of work and could be trusted.[41]

Mr. O'Connor tried to make plans for alternative housing, hoping to preserve his employment.[42]

Mr. O'Connor then approached the front desk manager again, asking her to please change the decision.[43] Instead, the manager told him that his employment was over, and he needed to speak to Ms. Bair.[44]

Ms. Bair told Mr. O'Connor that "because of his lack of honesty and arguing that he could not be employed with us, [and] therefore could not live in employee housing."[45] Mr. O'Connor expressed that he was looking for alternative places to stay but was still concerned that the denial of his service animal was illegal.[46] Ms. Bair replied "that being removed from housing and employment was not related to his service animal but was because he was dishonest about the service animal, had argued about the denial of the service animal, and had said that he

---

[38] *Id.* ¶ 74.
[39] *Id.* ¶ 76.
[40] *Id.* ¶ 77.
[41] *Id.* ¶ 81.
[42] *Id.* ¶¶ 82–83.
[43] *Id.* ¶ 84.
[44] *Id.* ¶ 85.
[45] *Id.* ¶ 86.
[46] *Id.* ¶ 87.

5

wanted to seek legal advice from an attorney regarding Collett's denial of his service animal."[47] Mr. O'Connor protested, but Ms. Bair said she was not going to change her mind.[48] Mr. O'Connor packed up and left that day.[49]

## STANDARD

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[50] Thus, to survive, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[51] A claim 'has facial plausibility' if the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"[52] At the motion to dismiss stage, a court must accept as true all well-pleaded facts and construe the fact allegations in the light most favorable to the plaintiff.[53] But "[t]he court does not accept as true legal conclusions that are couched as factual allegations,"[54] as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[55]

## DISCUSSION

Plaintiff brings claims under two statutes: the ADA and the FHA. The court considers the claims under each statute in turn.

---

[47] *Id.* ¶ 89.
[48] *Id.* ¶¶ 90–91.
[49] *Id.* ¶ 92.
[50] *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999).
[51] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[52] *VDARE Found. v. Colorado Springs*, 11 F.4th 1151, 1158–59 (10th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678).
[53] *Thomas v. Kaven*, 765 F.3d 1183, 1190 (10th Cir. 2014).
[54] *Murphey v. Mid-Century Ins. Co.*, No. 13-2598, 2014 WL 2619073, at *7 (D. Kan. June 12, 2014) (citing *Ashcroft*, 556 U.S. at 678).
[55] *Ashcroft*, 556 U.S. at 678.

I. **ADA Claims**

Under the ADA, an employer cannot "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[56] "A plaintiff proves a violation of the ADA by direct evidence of discrimination or by following the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*."[57]

Under *McDonnell Douglas*, a plaintiff must first establish a prima facie claim.[58] "If the plaintiff advances a prima facie case of discrimination, the burden shifts to the employer to articulate a 'legitimate, nondiscriminatory reason' for not hiring the plaintiff."[59] "If the employer articulates a satisfactory reason, the burden shifts back to the plaintiff to demonstrate that the employer's stated reason is a pretext for discrimination."[60]

However, at the motion to dismiss stage, the plaintiff need only state a *plausible* claim.[61] Thus, "the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in [the] complaint," though "the elements of each cause of action help to determine whether [plaintiff]

---

[56] 42 U.S.C. § 12112(a).
[57] *Baum v. Dunmire Prop. Mgmt., Inc.*, No. 21-cv-00964, 2022 WL 889097 (D. Colo. Mar. 25, 2022) (citing *Lincoln v. BNSF Ry. Co.*, 900 F.3d 1166, 1192 (10th Cir. 2018) ("In the absence of direct evidence of discrimination, a court uses the *McDonnell Douglas* burden-shifting framework to evaluate an ADA discrimination claim premised on disparate treatment."); *see also Hawkins v. Schwan's Home Serv., Inc.*, 778 F.3d 877, 883 (10th Cir. 2015) ("We generally review [ADA] disparate-treatment claims under the framework of *McDonnell Douglas* . . . . However, we have explained that *McDonnell Douglas's* 'burden-shifting framework may be unnecessary and inappropriate' where, as here, there is direct evidence of discrimination.").
[58] *Norwood v. United Parcel Serv., Inc.*, 57 F.4th 779, 786 (10th Cir. 2023) (citing *Dansie v. Union Pac. R.R. Co.*, 42 F.4th 1184, 1192 (10th Cir. 2022)).
[59] *Lincoln*, 900 F.3d at 1193 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).
[60] *Id.*
[61] *Iqbal*, 556 U.S. at 678.

has set forth a plausible claim."[62] This also means that "at the motion to dismiss stage, the plaintiff need not rebut a defendant's proffered rationale for termination."[63]

Plaintiff brings three claims under the ADA: (1) failure to grant a reasonable accommodation; (2) wrongful termination; and (3) retaliation. The court considers each in turn.

### A. Failure to Accommodate

The ADA prohibits "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]."[64] To establish a prima facia case for failure to accommodate, "Plaintiff must show: (1) []he was disabled; (2) []he was otherwise qualified; (3) []he requested a plausibly reasonable accommodation; and (4) Defendant refused to accommodate h[is] disability."[65] This test "is not an onerous one."[66] For purposes of their motion, Defendants concede the first and second elements.[67]

Defendants argue that the ADA only protects reasonable accommodations that enable an employee to perform the essential functions of their job. Defendants assert that since Plaintiff requested a housing accommodation, not an accommodation needed to perform his job, Defendants did not fail to accommodate Plaintiff's disability under the ADA.

---

[62] *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (citing *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 515 (2002); *Twombly,* 550 U.S. at 570).
[63] *Baum*, 2022 WL 889097, at *3 (citing *Adenowo v. Denver Pub. Sch.*, No. 14-cv-02723, 2015 WL 4511924, at *3 (D. Colo. June 17, 2015), *report and recommendation adopted*, No. 14-cv-02723, 2015 WL 4504931 (D. Colo. July 24, 2015) (observing that at the motion to dismiss stage "a plaintiff is not required to meet the burden-shifting framework, where the initial burden is on a plaintiff to establish a prima facie case of discrimination")).
[64] 42 U.S.C. § 12112(b)(5)(A).
[65] *Norwood*, 57 F.4th at 786 (citing *Dansie*, 42 F.4th at 1192).
[66] *Id.* (citing *Dansie*, 42 F.4th at 1192).
[67] MTD 5.

8

But the ADA also prohibits discrimination "in regard to . . . privileges of employment."[68] Privilege means "[a] particular and peculiar benefit or advantage enjoyed by a person, company, or class, beyond the common advantages of other citizens. An exceptional or extraordinary power or exemption. A peculiar right, advantage, exemption, power, franchise, or immunity held by a person or class, not generally possessed by others."[69] The Tenth Circuit explained that the ADA's discrimination prohibition is interpreted broadly, holding that "the ADA's discrimination proscription reaches 'the *entire spectrum*' of employment-based disability discrimination."[70] The Tenth Circuit requires only "that the discrimination must relate to some aspect of employment"[71]

Here, the employer-provided housing is a privilege of employment because the housing is a "particular . . . benefit" provided by the employer specifically to employees—not to the general public. While employees were not required to stay in the housing and still paid rent, the housing was only available to a specific class—employees—and had unique benefits for that class—namely, an affordable rate and a short commute. And any discrimination in the housing is related to "some aspect of employment" as the employer provided and managed the benefit.[72]

The EEOC regulations interpreting the ADA, though only persuasive, make this even more clear: "The term reasonable accommodation means: . . . (iii) Modifications or adjustments that enable a covered entity's employee with a disability to enjoy *equal benefits and privileges of*

---

[68] 42 U.S.C. § 12112(a); *see also Hishon v. King & Spalding*, 467 U.S. 69, 75 (1984) (under Title VII's very similar provision prohibiting employment discrimination, "[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free under the employment contract simply not to provide the benefit at all.")
[69] Privilege, Black's Law Dictionary (6th Ed. 1990).
[70] *Exby-Stolley v. Bd. of Cnty. Commissioners*, 979 F.3d 784, 818 (10th Cir. 2020) (quoting *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 64 (1986)) (emphasis added).
[71] *Id.*
[72] *See id.*

*employment as are enjoyed by its other similarly situated employees without disabilities.*"[73] "The obligation to make reasonable accommodation applies to all services and programs provided in connection with employment, *and to all non-work facilities provided or maintained by an employer for use by its employees* . . . [including] employer provided cafeterias, lounges, gymnasiums, auditoriums, transportation and the like."[74]

Plaintiff alleges he requested a reasonable accommodation to equally enjoy the benefits of employer-provided housing. The employer-provided housing is a privilege of employment offered only to employees—just like monetary compensation or access to a breakroom or other non-work facilities. Defendants refused to accommodate Plaintiff's disability in the employer-provided housing. Thus, Plaintiff plausibly pled a failure to accommodate claim under the ADA.

### B.  Wrongful Termination

"To present a claim of wrongful termination, [the plaintiff] must show: (1) he is disabled within the meaning of the ADA; (2) he can perform, either with or without reasonable accommodation, the essential functions of the desired job; and (3) 'that [the defendant] terminated him because of his disability.'"[75] The termination is "because of his disability" if it stems from the disability itself or from the employee's need for a reasonable accommodation.[76]

---

[73] 29 C.F.R. Part 1630.2(o)(iii); *see also E.E.O.C. v. MCI Telecommunications Corp.,* 993 F. Supp. 726 (D. Ariz. 1998) ("Clearly, the right not to be singled out, embarrassed and humiliated by one's employer as a result of a disability is a benefit or privilege of employment.").
[74] 29 C.F.R. Part 1630, App.
[75] *Bartee v. Michelin N. Am., Inc.*, 374 F.3d 906, 912 n.4 (10th Cir. 2004).
[76] 42 U.S.C. § 12112(a)(5)(B) (prohibiting "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant"); *Dinse v. Carlisle Foodservice Prods. Inc.*, No. CIV-11-0905, 2012 WL 12892275 at *3 (W.D. Okla. June 14, 2012), *aff'd,* 541 F. App'x 885 (10th Cir. 2013) ("Terminating an employee because of the employer's need to make reasonable accommodation is also discrimination on the basis of disability.") (citing 42 U.S.C. § 12112(a)(5)(B)); *see also Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 1001–02 & n.1 (D. Or. 1994) ("Although defendant denies it

10

Defendants concede the first and second elements but dispute that Defendants terminated Plaintiff because of his disability.[77]

Defendants argue that Plaintiff's complaint concedes that Defendants terminated Plaintiff because of "i) Plaintiff's dishonesty regarding the alleged service animal; ii) Plaintiff's attempt to circumvent Defendant's decision regarding Plaintiff's demanded accommodation; and iii) Plaintiff's continued arguing regarding the decision."[78] Thus, Defendants argue, since Collett's did not terminate Plaintiff because of his disability, he does not have a wrongful termination claim.

But the close timing of Plaintiff's accommodation request and firing, along with Ms. Bair's disability-related explanations, support a plausible inference of disability-based termination. First, the complaint only alleges that Ms. Bair *told* Plaintiff those were the reasons for his termination. Plaintiff did not concede that those were the real reasons for his termination. And second, Plaintiff need not rebut Defendants' claimed reasons for the termination at this stage—Plaintiff only needs to state a plausible claim that he was terminated because of his disability or because of his need for a reasonable accommodation.[79] Plaintiff alleges Defendants terminated him shortly after telling Defendants that he needed a service dog for his disability. And the reasons Ms. Bair gave for the termination all stem from Plaintiff's requested

---

terminated plaintiff "because" of his disability, terminating an employee because of a symptom of that disability is tantamount to terminating him because of the disability. . . . A comparable situation would be a diabetic employee terminated for eating a candy bar while at her post. The employee may have nominally been terminated for violating a company rule prohibiting eating while on duty, rather than "because" she is a diabetic. However, the symptoms cannot be separated from the underlying cause. The employee was terminated "because" of her disability, notwithstanding that the prohibition upon eating on duty applies equally to all employees, disabled or not.").
[77] MTD 8.
[78] *Id.* (citing Compl. ¶¶ 86, 89).
[79] *Baum*, 2022 WL 889097 at 3; *see also Khalik*, 671 F.3d at 1192 (citing *Swierkiewicz*, 534 U.S. at 515; *Twombly*, 550 U.S. at 570).

11

accommodation—an alignment that supports an inference that the requested accommodation itself may have triggered the firing. Based on the facts in the complaint, it is plausible that Defendants' terminated Plaintiff because of his disability or because of the need to make reasonable accommodations for his disability. Thus, Plaintiff has plausibly pled a wrongful termination claim.

### C. Retaliation

"A prima facie case of retaliation under the ADA requires: '(1) that [an employee] engaged in protected opposition to discrimination, (2) that a reasonable employee would have found the challenged action materially adverse, and (3) that a causal connection existed between the protected activity and the materially adverse action.'"[80] Here, Defendants challenge the first and third elements.

Defendants first argue that Plaintiff was not engaged in a protected activity because he demanded a housing accommodation, not a workplace accommodation. But, as explained more fully above, the ADA protects against discrimination "in regard to . . . privileges of employment."[81] And "a request for accommodation can constitute protected activity supporting a retaliation claim . . . if it is 'sufficiently direct and specific, giving notice that [the employee] needs a special accommodation.'"[82] Here, Plaintiff informed multiple managers of his need for a

---

[80] *E.E.O.C. v. Picture People, Inc.*, 684 F.3d 981, 985 (10th Cir. 2012) (quoting *Hennagir v. Utah Dep't of Corr.*, 587 F.3d 1255, 1265 (10th Cir. 2009); and citing 42 U.S.C. § 12203).
[81] 42 U.S.C. § 12112(a).
[82] *Foster v. Mountain Coal Co., LLC*, 830 F.3d 1178, 1188 (10th Cir. 2016) (first citing *Jones v. U.P.S., Inc.*, 502 F.3d 1176, 1194 (10th Cir. 2007) ("We have treated requests for reasonable accommodation as protected activity under the ADA."); *Selenke v. Med. Imaging of Colorado*, 248 F.3d 1249, 1265 (10th Cir. 2001) (concluding that evidence of requests for improvements to the work environment because of breathing difficulties could support a finding of protected activity); and then quoting *Calero–Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 23 (1st Cir. 2004)).

service dog,[83] made clear that it was an accommodation for his disability,[84] and even asserted that he believed denying him the accommodation was illegal.[85] The requests put Defendants on notice that the employee needed an accommodation. Thus, Plaintiff plausibly engaged in protected opposition to discrimination by requesting a reasonable accommodation to access a privilege of employment—employer-provided housing.

Second, Defendants argue there was not a causal connection because it terminated Plaintiff for "dishonesty, circumvention, and arguing, not because he had Type I Diabetes."[86] But Plaintiff presents direct factual allegations that Defendants terminated him because he engaged in protected activity. Plaintiff alleges that Ms. Bair told Plaintiff he was fired because he "had argued about the denial of the Service animal[] and had said that he wanted to seek legal advice from an attorney regarding Collett's denial of his service animal."[87] Plaintiff's request for an accommodation was protected activity and terminating him for disputing its denial provides direct evidence linking the adverse action to the protected activity. Thus, Plaintiff plausibly pled a retaliation claim.

In sum, Plaintiff plausibly pled all three of his ADA claims.

**II.    FHA Claims**

Defendants challenge each of Plaintiff's four causes of action under the FHA. The court considers each cause of action in turn.

---

[83] Compl. ¶¶ 45, 53–54, 59, 63, 65, 70, 76, 84.
[84] *Id.* ¶¶ 59, 65, 67, 76.
[85] *Id.* ¶¶ 70, 76.
[86] MTD 10.
[87] Compl. ¶ 89.

13

### A. Failure to Provide a Reasonable Accommodation

In the Tenth Circuit, "[t]o establish a failure-to-accommodate claim under the FHAA, [the plaintiff] must show that its requested accommodation was reasonable and necessary to afford its disabled residents the 'equal opportunity to use and enjoy a dwelling.'"[88] Multiple district courts within the Tenth Circuit, following other circuits, have parsed the failure-to-accommodate claim into five elements: requiring the Plaintiff to show "(1) he suffers from a disability; (2) the defendant knew or reasonably should have known of the plaintiff's disability; (3) the plaintiff needs an accommodation to have an equal opportunity to use and enjoy his dwelling; (4) the accommodation is reasonable; and (5) the defendant refused to make the accommodation."[89] The court follows that approach here. Defendants concede the first two elements.[90]

Defendants first argue that Plaintiff never made an "actual request" and instead "assumed it was ok and simply informed Defendants he was bringing an alleged service dog."[91] But this is merely semantics. "An employee need not use magic words" to request an accommodation.[92] As

---

[88] *Courage to Change Ranches Holding Co. v. El Paso*, 73 F.4th 1175, 1204 (10th Cir. 2023) (quoting 42 U.S.C. § 3604(f)(3)(B)).
[89] *Carlson v. Carrington Square LLC*, No. 2:22-cv-00372, 2025 WL 1017536 at 11 (D. Utah Apr. 4, 2025) (quoting *Haws v. Norman*, No. 2:15-cv-00422, 2017 WL 4221064, at *4 (D. Utah Sept. 20, 2017) (citing *Arnal v. Aspenview Condo. Ass'n*, 226 F. Supp. 3d 1177, 1183 (D. Colo. 2016))); *see also Courage to Change*, 73 F.4th at 1204.
[90] MTD 11.
[91] MTD 12.
[92] *See Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (citing EEOC Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act ("EEOC Guidance"), at 8 (1999) ("To request accommodation, an individual may use 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'")); *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 997 (D. Or. 1994) ("The statute does not require the plaintiff to speak any magic words before he is subject to its protections. The employee need not mention the ADA or even the term "accommodation.").

discussed above, Plaintiff made clear to Defendants his need for a reasonable housing accommodation multiple times.[93] That is sufficient.

Second, Defendants argue that Plaintiff's complaint does not establish that the requested accommodation was necessary. As the Tenth Circuit has explained, "the statute requires accommodations that are necessary (or indispensable or essential) to achieving the objective of equal housing opportunities between those with disabilities and those without."[94] Defendants argue the dog was unnecessary because Plaintiff never proved to Defendants that it was a certified service animal and because he spent several nights without the dog.

But at this stage, the court takes all the Plaintiff's allegations as true and makes all inferences in his favor.[95] Plaintiff alleges that the dog was "a trained diabetic alert dog."[96] While maybe not "certified," Defendants do not cite any legal requirement that the dog be certified. Instead, the only legal requirement is that the dog was necessary. Plaintiff alleges that without his trained diabetic alert dog he risks unnoticed blood sugar drops that could result in coma or death.[97] At this stage on these alleged facts, a trained diabetic alert dog that helps Plaintiff avoid coma or death is plausibly a necessary accommodation.

And it is plausible that the service dog may still be necessary for long-term housing even if Plaintiff spent a couple of nights without the dog. As an example, if someone in a wheelchair moves into housing where there is a single step, the person in the wheelchair may be capable of moving into the housing before a ramp is installed. For those few days, under great discomfort,

---

[93] Compl. ¶¶ 45, 53–54, 59, 63, 65, 67–68, 70, 76, 84.
[94] *Cinnamon Hills Youth Crisis Ctr., Inc. v. Saint George City*, 685 F.3d 917, 923 (10th Cir. 2012).
[95] *Thomas*, 765 F.3d at 1190.
[96] Compl. ¶ 25.
[97] *Id.* ¶¶ 43, 76.

the person used their arms to leverage themselves out of the wheelchair, sit on the step, move the wheelchair above the step, and then leveraged themselves back into the wheelchair. Can the landlord now claim that installing a ramp to go up that one step is not necessary? Clearly not. So too here. Plaintiff alleges that he risks great harm from nocturnal blood sugar drops without his service dog.[98] Taking inferences in his favor, Plaintiff enduring a couple days without his service dog does not prove the service dog is unnecessary for equal access and enjoyment of long-term housing.[99]

Third, Defendants argue that the accommodation was not reasonable. "An accommodation is reasonable under the FHA when it imposes no fundamental alteration in the nature of the program or undue financial or administrative burdens."[100] Here, the complaint alleges that guests and some other employees were allowed to bring pets on the premises.[101] This allows a plausible inference that Plaintiff's request to bring a trained service dog onto the premises would be a reasonable accommodation unlikely to cause any fundamental alteration or undue burden.

Thus, taking all inferences in Plaintiff's favor, he plausibly alleged a failure to provide a reasonable accommodation claim under the FHA.

---

[98] *Id.* ¶¶ 26, 43.
[99] *See id.* ¶ 43 ("Mr. O'Connor did not bring Smokey with him to Collett's Mountain Resorts during the move-in process to avoid unnecessary stress to the service animal while arranging the environment and gathering information about the living space, including the size of dog crate which would be able to fit into the area. Mr. O'Connor *risked unnoticed nocturnal blood sugar drops* during the time he was separated from his service animal.").
[100] *Arnal*, 226 F. Supp. 3d at 1185–86 (citing *Giebeler v. M & B Associates*, 343 F.3d 1143, 1157 (9th Cir. 2003)) ("In most circumstances, waiving a no-pet rule to allow a disabled resident the assistance of a service animal is a reasonable accommodation.").
[101] Compl. ¶¶ 41–42, 80–81.

### B. Discriminatory Statement

Defendants argue that Plaintiff's fifth cause of action for discriminatory statements should be dismissed for the same reasons as his reasonable accommodation claim.[102] Defendants assert that the elements are the same for both claims.[103] But since the court rejected Defendants' argument on Plaintiff's reasonable accommodation claim, these reasons cannot support the dismissal of the discriminatory statement claim.

### C. Denial of Housing

Defendants argue that Plaintiff's claim for denial of housing should also be dismissed "for the same reasons set forth in the" failure to provide a reasonable accommodation section.[104] Since the court has rejected Defendants' argument on Plaintiff's reasonable accommodation claim, these reasons cannot support the dismissal of the denial of housing claim.

### D. Retaliation

Under Section 3617 of the FHA, it is "unlawful to coerce, intimidate, threaten, or interfere with any person in the exercise or enjoyment of, or on account of his having exercised or enjoyed . . . any right granted or protected by" the FHA.[105] Two different formulations have been used within the Tenth Circuit to apply Section 3617:

---

[102] MTD 10; Reply 8.
[103] *Id.* Defendants did not provide any analysis or citations to support their claim that the elements for discriminatory statements are the same as the elements for a failure to accommodate claim.
[104] MTD 14.
[105] 42 U.S.C. § 3617.

First: "To state a claim of retaliation under the FHA, the plaintiff must show that (1) he was engaged in protected activity; (2) he suffered an adverse action in the form of coercion, intimidation, threats, or interference; and (3) there was a causal link between the two."[106]

Or second: "To prove a § 3617 retaliation claim, a plaintiff must show that '(1) she is a protected individual under the FHA, (2) she was engaged in the exercise or enjoyment of her fair housing rights, (3) the defendants coerced, threatened, intimidated, or interfered with the plaintiff on account of her protected activity under the FHA, and (4) the defendants were motivated by an intent to discriminate.'"[107]

The Tenth Circuit has not addressed which formulation is correct in a binding, published opinion. However, here, Defendants only provided arguments under the first formulation. Thus, the court will begin by assessing those arguments, assuming without deciding that the first formulation is correct. If those arguments are unavailing, then the court cannot dismiss Plaintiff's claim regardless of which formulation is correct.

Defendants first argue that Plaintiff did not engage in protected activity because he did not "request" an accommodation; instead, he demanded to be allowed his service dog. But, as already explained above, Plaintiff does not need to say any magic words to request an accommodation.[108] He made his need for the accommodation clear and that is sufficient.

---

[106] *Arnal*, 226 F. Supp. 3d at 1187–88; *Haws*, 2017 WL 4221064, at *8–10 (Conducting an in-depth review of the two tests and deciding on the first because it was more in line with the statutory language and closer to how the Tenth Circuit interpreted analogous retaliation claims under the ADA.); *Morgan v. Carrington Mortg. Servs.*, 719 F. App'x 735, 743 (10th Cir. 2017) ("To state a plausible claim under the FHA, a plaintiff must allege a causal connection between her disability or protected activity and the alleged adverse action.") (citing *Wilson v. Warren*, 830 F.3d 464, 467–68 (7th Cir. 2016)).

[107] *Hatfield v. Cottages on 78th Cmty. Ass'n*, No. 21-4035, 2022 WL 2452379 (10th Cir. July 6, 2022) (quoting *Bloch v. Frischholz*, 587 F.3d 771, 783 (7th Cir. 2009)).

[108] *See Smith*, 180 F.3d at 1172 (citing EEOC Guidance at 8 ("To request accommodation, an individual may use 'plain English' and need not mention the ADA or use the phrase 'reasonable accommodation.'"); *Schmidt*, 864 F.

18

Defendants next argue that Plaintiff has not alleged an adverse action under the FHA. "Under the Fair Housing Acts, adverse action includes coercion, intimidation, threats, and interference."[109] Here, Defendants denied any accommodation for him, insisted that he either move out or find a new home for his service dog, and eventually terminated his employment and denied him housing altogether. This plausibly states an adverse action interfering with Plaintiff's rights to receive an accommodation and to protest the denial of that accommodation.

Third, Defendants argue that there is no causal link between Plaintiff's protected activity and the adverse action. But Ms. Bair allegedly told Plaintiff that protesting the denial of the accommodation was one of the reasons for his termination and denial of housing.[110] This shows a connection between Plaintiff's protected activity and the adverse action.

All in all, Plaintiff has plausibly alleged all seven causes of action.[111]

## ORDER

Defendants' motion to dismiss[112] is DENIED.

---

Supp. at 997 ("The statute does not require the plaintiff to speak any magic words before he is subject to its protections. The employee need not mention the ADA or even the term "accommodation.").
[109] Haws, 2017 WL 4221064 at *11 (citing 42 U.S.C. § 3617).
[110] Compl. ¶ 89; MTD 15–16.
[111] Plaintiff also brought each of his FHA claims under the nearly identical state law, the Utah Fair Housing Act ("UFHA"). Defendants assert that Plaintiff's UFHA claims should be dismissed for the same reasons as the FHA claims. MTD 10. Since the court rejected Defendants' FHA arguments, the court will similarly not dismiss Plaintiff's UFHA claims.
[112] ECF No. 16.

Signed January 13, 2026.

BY THE COURT

_____
David Barlow
United States District Judge